IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

VINCENT EDWARD SANTONIA,

      Plaintiff,

v.                       CASE NO. 2:07-cv-00463

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

M E M O R A N D U M   O P I N I O N

    This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  Both parties have consented in writing to a decision by the United States Magistrate Judge.

    Plaintiff, Vincent Edward Santonia (hereinafter referred to as "Claimant"), protectively filed applications for SSI and DIB on August 24, 2005, alleging disability as of August 1, 2005, due to breathing problems, heart problems and valve replacement.  (Tr. at 76-79, 93, 269-71.)  The claims were denied initially and upon reconsideration.  (Tr. at 33-37, 40-42, 272-76, 279-81.)  On March 23, 2006, Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 46.)  A hearing was held on September 21, 2006, before the Honorable Valerie A. Bawolek.  (Tr. at 284-304.)  On January 29, 2007, the ALJ held a supplemental hearing.  (Tr. at

305-45.)  By decision dated March 30, 2007, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 12-21.)  The ALJ's decision became the final decision of the Commissioner on June 27, 2007, when the Appeals Council denied Claimant's request for review.  (Tr. at 5-8.)  On July 30, 2007, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2007).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. §§ 404.1520(c), 416.920(c).  If a severe

impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2007).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

    In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at

3

14.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of borderline intellectual functioning, atrial fibrillation and anxiety.  (Tr. at 14.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 15.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations.  (Tr. at 17.)  As a result, Claimant cannot return to his past relevant work.  (Tr. at 19.)  Nevertheless, the ALJ concluded that Claimant could perform jobs such as cleaner, produce weigher, inspector on assembly line, hand packer and street cleaner, which exist in significant numbers in the national economy.  (Tr. at 20.)  On this basis, benefits were denied.  (Tr. at 21.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)).

4

Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was thirty-six years old at the time of the administrative hearing. (Tr. at 288.) Claimant graduated from high school. (Tr. at 290.) In the past, he worked as a truck driver, for a tire company and as a security guard. (Tr. at 294-95.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize the evidence of record related to Claimant's mental condition below.

Medical Evidence Related to Claimant's Mental Condition

The record includes Claimant's school records. Claimant received Cs, Ds and Fs. (Tr. at 154-58.)

On September 23, 2005, Dr. Gregory Chaney completed a West Virginia Department of Health and Human Resources, General Physical

Adult form on which he noted that Claimant had acrophobia, a fear
of heights.  (Tr. at 193.)

     On June 12, 2006, Mareda L. Reynolds, M.A. examined Claimant
at the request of his counsel.  Claimant reported he was depressed
and did not like to be around other people.  (Tr. at 204-05.)
Claimant reported he had undergone mental disability evaluations in
the past, but had received no ongoing mental health treatment and
took no psychotropic medication.  (Tr. at 206.)  Claimant's social
interaction was mildly deficient.  He presented as unsophisticated
and had poor eye contact.  Claimant's speech was normal.  His
affect was moderately constricted but appropriate to expressed
ideas.  Claimant denied hallucinations, delusions, obsessions or
compulsions.  He insight was fair, and his judgment was poor.  (Tr.
at 207.)  Immediate memory was within normal limits, recent memory
was moderately deficient and remote memory was fair.  Attention and
concentration were mildly deficient.  (Tr. at 207-08.)  On the
WAIS-III, Claimant attained a verbal IQ score of 80, a performance
IQ score of 73 and a full scale IQ score of 75.  (Tr. at 208.)  The
scores were considered valid.  (Tr. at 209.)  Ms. Reynolds
diagnosed dysthymic disorder on Axis I and avoidant personality
disorder and borderline intellectual functioning on Axis II.  She
rated Claimant's GAF at 50.  (Tr. at 210.)

     Ms. Reynolds completed a Mental Functional Capacities
Questionnaire and Assessment on which she opined that Claimant had

fair to poor abilities in all areas except for a good ability to understand, remember and carry out simple job instructions. (Tr. at 197-203.)

On October 18, 2006, Kelly Robinson, M.A. examined Claimant at the request of the State disability determination service. Claimant reported a depressed mood, sleep problems and withdrawal from people. (Tr. at 252.) Claimant reported no mental health treatment. (Tr. at 253.) Claimant's mood was anxious, and his affect was broad and reactive. Thought processes were logical and coherent and there was no indication of delusions, obsessive thoughts or compulsive behavior. (Tr. at 254.) Claimant's insight was poor, and his judgment was severely deficient. Claimant's immediate memory and recent memory were within normal limits. His remote memory was mildly deficient. His concentration was moderately deficient. (Tr. at 255.) Ms. Robinson diagnosed depressive disorder, not otherwise specified and anxiety disorder, not otherwise specified on Axis I and personality disorder, not otherwise specified on Axis II. (Tr. at 257.) Claimant's social functioning was mildly deficient, his attention and concentration were moderately deficient and persistence and pace were mildly deficient. (Tr. at 258.)

Ms. Robinson completed a Medical Assessment of Ability to do Work-Related Activities (Mental) on which she opined that Claimant had poor abilities in several areas, including dealing with the

public, relating to coworkers, using judgment, interacting with supervisors, understanding, remembering and carrying out complex job instructions, maintaining personal appearance and relating predictably in social situations.  (Tr. at 259-61.)

Testimony from Administrative Hearings

At the first administrative hearing, the ALJ determined that a mental status evaluation was needed.  (Tr. at 301.)  As a result, Ms. Robinson examined Claimant.

At the second administrative hearing, Claimant testified that he does not trust people and tried to avoid them.  (Tr. at 320.) Claimant reported feelings of sadness, uselessness and worthlessness.  (Tr. at 320.)

The ALJ called John Linton, M.D. to testify about Claimant's mental condition.  Dr. Linton testified that the assessments completed by Ms. Reynolds and Ms. Robinson were virtually in agreement.  Dr. Linton testified that he was "not real sure of the B criteria here," noting the lack of mental health treatment.  (Tr. at 328.)  Dr. Linton testified that he agreed with the assessment completed by Ms. Robinson.  (Tr. at 328.)  The ALJ asked Dr. Linton if Claimant met or equaled a listing, and he testified that Claimant has an anxiety disorder, but that it did not meet the listing.  (Tr. at 334-36.)

At the second administrative hearing, the vocational expert testified that if Claimant were limited to light work, with a need

8

to avoid heights and hazards, a sit/stand option and simple work
that was solitary and not in a public service capacity, she could
identify no jobs. (Tr. at 338.)  The ALJ modified the hypothetical
question by eliminating the sit/stand option and directing instead,
that Claimant might need to sit for a few seconds at a time during
heart flutters and that he could only perform jobs involving not
much interaction with others.  In response, the vocational expert
identified jobs.  (Tr. at 339-40.)  When asked if Claimant could
work given the limitations contained in Ms. Robinson's assessment
or in Ms. Reynolds' assessment, the vocational expert testified
that she could identify no jobs.  (Tr. at 343.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not
supported by substantial evidence because the ALJ improperly
disregarded the evidence of record related to Claimant's mental
condition.  When Claimant's mental limitations were included in a
hypothetical question to the vocational expert, the vocational
expert could identify no jobs.  (Pl.'s Br. at 3-4.)

The Commissioner argues that the ALJ properly accounted for
the functional limitations caused by Claimant's mental impairments
in finding that he was not disabled.  (Def.'s Br. at 9-13.)

In her decision, the ALJ found that Claimant had severe mental
impairments, including anxiety and borderline intellectual
functioning.  The ALJ determined, based on the testimony of Dr.

Linton, that Claimant did not meet or equal any applicable listing. (Tr. at 16-17.)  Regarding the "B" criteria, the ALJ found that Claimant had mild limitation in activities of daily living, moderate limitation in social functioning, mild limitation in concentration, persistence and pace and no episodes of decompensation.  (Tr. at 16.)  In her residual functional capacity finding, the ALJ determined that Claimant was limited to light work, with a need to avoid heights and hazards, a need for simple work, an inability to work in a public service capacity, an ability to read at a third grade level, spell at a second grade level and perform math at a fourth grade level, avoid work involving much interaction with others and that Claimant might need to sit for a few seconds if his heart flutters.  (Tr. at 17.)

   The ALJ considered Claimant's subjective complaints, including that he cannot remain in an enclosed room.  (Tr. at 17.)  The ALJ concluded that Claimant was not entirely credible because of a wide variety of daily activities, medical evidence related to his physical condition, that Claimant was histrionic and made strange motions at the administrative hearing despite the fact that Ms. Reynolds did not note any abnormal psychomotor activity, and that Claimant had not sought medical treatment for his anxiety disorder although he does have access to medical care.  (Tr. at 18.)

   After finding that Claimant could perform a significant numbers of jobs in the national economy, the ALJ acknowledged that

"[c]ounsel for the claimant asked a question of the vocational expert whether jobs would exist in significant numbers if the limitations in Exhibit B-10F or B-16F applied. The vocational expert replied in the negative. The Administrative Law Judge rejects the latter testimony by the vocational expert as it affords full credibility to the claimant. As previously discussed, the Administrative Law Judge found the claimant only partially credible." (Tr. at 20.)

The ALJ did not properly weigh the opinions of Ms. Reynolds and Ms. Robinson in keeping with 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6) (2007), and her reasons for rejecting the testimony of the vocational expert are not supported by substantial evidence. Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency (5) specialization, and (6) various other factors. Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner.

As the medical expert noted at the second administrative hearing, the assessments completed by Ms. Reynolds, who examined Claimant at the request of his counsel, and Ms. Robinson, who examined Claimant at the request of the State disability

11

determination service, were largely consistent. (Tr. at 328.) Moreover, the medical expert testified that he agreed with the limitations opined by Ms. Robinson on her assessment. (Tr. at 328.) Despite the medical expert's testimony that he agreed with the limitations opined by Ms. Robinson and the vocational expert's testimony that Claimant could not work if he had limitations as opined by Ms. Reynolds or Ms. Robinson, the ALJ never fully considered the factors above or fully explained why she apparently rejected the opinions of Ms. Reynolds, Ms. Robinson and the medical expert. In comparison, the ALJ provides a very adequate explanation of her reasons for rejecting the opinion of Dr. Chaney, who opined that Claimant was disabled by his physical impairments. (Tr. at 19.)

In a situation such as this, where the two examining medical sources (one referred by the State disability determination service), and the medical expert called to testify at the administrative hearing, express agreement regarding Claimant's limitations, and the vocational expert in turn opines that there are no jobs with such limitations, the court would have expected, and the regulations require, a better explanation about the ALJ's reasons for the weight afforded this evidence.

Furthermore, the statement that the vocational expert's testimony was rejected because it afforded full credibility to the Claimant, is not supported by substantial evidence. The vocational

expert's testimony was based on limitations opined by two examining sources, and the medical expert testified that he agreed with the limitations opined by Ms. Robinson.   Without addressing this evidence and explaining the weight afforded thereto, the court cannot conclude that this reason for rejecting the testimony of the vocational expert is supported by substantial evidence.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is not supported by substantial evidence.   Accordingly, by Judgment Order entered this day, this matter is REVERSED and REMANDED for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: March 17, 2009

_Mary E. Stanley_
Mary E. Stanley
United States Magistrate Judge

13